# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No.: 1:08-CR-197-VEH-TMP |
| **MARCEDRIC ADRIAN KIRBY,** | ) |
| **Defendant.** | ) |

## ORDER

This matter is before the Court on a Motion to Suppress ("Motion") filed by Defendant Marcedric Adrian Kirby ("Kirby"; "Defendant"). Kirby seeks to suppress a gun, cocaine, and cell phones found during in his home the day he was arrested pursuant to an arrest warrant following his indictment. The gun and cocaine were found during a warrantless search of the defendant's home; the cell phones were found after a search warrant was applied for and issued.

Magistrate Judge Putnam held an evidentiary hearing and filed, on September 30, 2008, his Report and Recommendation that the Motion be denied. Defendant's counsel filed, on October 13, 2008, objections to the Report and Recommendation. The Court will adopt, as modified herein, the Findings of Facts and Conclusions of

Law of the Report and Recommendation of Magistrate Jude Putnam.

The Court has reviewed the transcript of the evidentiary hearing. For purposes of this ruling, the Defendant's disputed facts are accepted so long as there is evidentiary support in the testimony for such facts.

## I. Background and Facts

The salient background is that Kirby was one of a number of individuals investigated, and then indicted, after an investigation of a drug distribution organization in the Anniston, Alabama, area. Arrest warrants were issued for more than 25 individuals. The investigation revealed that the organization was violent, possessed and used firearms, and led investigators to believe the organization had murdered as many as four (4) people during its operations. None of this evidence implicated Kirby in any violence. That said, Kirby was the second arrest of the morning by this particular team of agents; the first arrest had found several people in the residence, and several firearms in that residence. The agents were told, at the briefing held before executing the arrest warrants, that some members of the organization were potentially violent and that it was possible that firearms would being present at some of the locations where arrests would be made.

Kirby was arrested at his house after opening the back door. Agents were stationed at the front and back doors, and around Kirby's house. Agents knocked at

the front and back doors, and announced they were police and were there to execute an arrest warrant. When Kirby opened the back door, the agent at the back door, Willingham, recognized Kirby from photographs in the arrest packet and from previous surveillance. Willingham grabbed Kirby's arm, pulled him through the open doorway, and passed him back to another agent immediately behind him, who handcuffed Kirby.

Immediately after "passing" Kirby back, Willingham entered the house through the open door to conduct what he described as a "protective sweep" of Kirby's house to assure that there were no other people in the house who might be a threat to the arrest team. Willingham knew Kirby was married and expected to find Kirby's wife in the house.

Willingham's sweep of the home revealed no one in the room where the back door was located, nor did it reveal anyone else except a woman, identified as Kirby's wife, and a small child, both of whom were in a back bedroom. Willingham asked the woman whether there were any guns or drugs in the house and she replied that Kirby had some cocaine in the couch where he was sleeping. Willingham told the woman to stay in the bed. She complied. There was no evidence that the woman, presumably Kirby's wife, had ready access to any weapon or that she presented any threat to any of the arrest team.

Willingham returned to the living room, which agent Kimbrell had already entered. Willingham told Kimbrell there were drugs on the couch. There were two couches in the living room; one had sheets and a sleeping pillow. Willingham searched that couch and found a small amount of cocaine under the pillow; Kimbrell searched the second couch and found a handgun under the cushions.

Kimbrell left the house to ask Kirby for consent to search the house. Kirby refused to give consent.

Kirby and his wife were allowed to dress. Kirby was removed to an arrest processing center. His wife and child remained at the house, but it is unclear whether they were inside or outside the house.

Kimbrell telephoned another agent (Battles) and told him what the arrest team had found. Battles applied for a search warrant, using the gun and the cocaine as probable cause. A state court judge issued a search warrant for the home. The application for the warrant and the supporting affidavit were not introduced into evidence, and the Court cannot tell from the record before it what showing was made to the state court judge to support the issuance of the search warrant for Kirby's house. After the warrant was issued, Battles called Kirby, who then searched the house. The search resulted in the discovery and seizure of several cell phones, but nothing else.

## II. Applicable Law

1. Kirby's arrest was made pursuant to a valid arrest warrant.

2. The seizure of the cocaine and gun were made without a search warrant and are presumed to be the fruits of a violation of Kirby's Fourth Amendment rights. *Katz v. U.S.*, 389 U.S. 347, 357 (1967) (4th Amendment imposes presumptive warrant requirement for searches and seizures). The house was Kirby's home, and he refused to consent to its search. There is no evidence that his wife consented to the search, either.

3. Because Kirby was, for all intents and purposes, removed from his home and secured instantaneously, and because there were a number of armed agents at the doors and around the house, no protective sweep of the house can be justified by reference to Kirby. Having been pulled out of his house and secured, he could not reach any weapon inside his house and did not pose a threat to any agent.

4. The protective sweep was justified, however, by the need of the agents to protect themselves from any other occupants of the house. They had reason to believe at least one person, Kirby's wife, would be there, and she was. Thus, a *Buie* type one search of the house, limited to looking at areas where a **person** might be found, was justified. *See Maryland v. Buie.* 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990); *U.S. v. Hromada*, 49 F.3d 685, 690 (11th Cir. 1995); U.S.

*v. Sunkett*, 95 F.Supp.2d 1367, 1368-69 (N.D. Ga. 2000).

5. There is no evidence of coercion or any other illegality connected with Willingham's asking Kirby's wife whether there were drugs or firearms in the house. Asking about drugs would not be justified by either a type one or type two *Buie* search since the drugs would not be related to any potential attack against the officers launched from within the residence. That said, Mrs. Kirby's reply provided Willingham with probable cause to secure a warrant to search the house for drugs and weapons.

6. The living room seizures of the cocaine by Willingham and the handgun by Kimbrell were made with probable cause but without a warrant and are therefore subject to suppression as the fruits of an illegal search.

7. The living room search cannot be justified as an exigent circumstances search because, at the time it was made, the house was secure, all known occupants had been identified and secured to the satisfaction of the agents, and there is no factual support for any other exigency. Kimbrell remained at the house the entire time while awaiting a response on Battles's application for a search warrant, so there was no risk of evidence being removed or destroyed.

8. The living room search is removed from the reach of the exclusion remedy by the application of the inevitable discovery exception to the exclusionary

rule.  Although the search warrant application and its supporting affidavit should have been introduced into evidence by the United States, the Court does not need them to be satisfied that the handgun and cocaine would inevitably have been found and seized.  Mrs. Kirby's response to Kimbrell's question that there was cocaine "on the couch" where Kirby slept is sufficient probable cause for a search warrant to search both couches and anywhere else in the house where cocaine might be secreted.  That means the entire house; cocaine is often found in very small quantities.  Because the agents could have stayed inside the house the entire time until the search warrant was issued, and the issuance of the search warrant is a foregone conclusion, and because at least one agent did in fact remain on the premises continuously until the search warrant was issued, the cocaine and handgun would have been inevitably discovered.  *See, e.g.*, *U.S. v. Rhind*, 289 F.3d 690, 694 (11th Cir. 2002) (inevitable discovery applied in an expanded *Terry* search).

### III. Conclusion

For the reasons stated above, the search and seizure of the handgun and cocaine, while warrantless, were nonetheless permissible under the Fourth Amendment.  The search and seizure of the cellphones were made pursuant to a search warrant supported by probable cause.

For the foregoing reasons, Defendant's Motion to Suppress [193] is **DENIED.**

**DONE** and **ORDERED** this the 23rd day of October, 2008.

                                              **VIRGINIA EMERSON HOPKINS**
                                              United States District Judge